# STATE OF MICHIGAN

# COURT OF APPEALS

VENKATA KRISHNA NALLABALLI,

        Plaintiff/Counter-
        Defendant/Appellant,

v

ESWARI ACHANTA,

        Defendant/Counter-
        Plaintiff/Appellee,

and

GMGT TECHNOLOGIES, INC.,

        Defendant/Appellee.

UNPUBLISHED
January 26, 2016

No. 322021
Washtenaw Circuit Court
LC No. 13-001104-CK

---

SUNEETHA NALLABALLI,

        Plaintiff-Appellant,

v

ESWARI ACHANTA and GMGT
TECHNOLOGIES, INC.,

        Defendants-Appellees.

No. 325704
Washtenaw Circuit Court
LC No. 14-000663-CK

---

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

This appeal involves two consolidated claims arising out of the same course of transactions and involving the same defendants, GMGT Technologies, Incorporated, a now-dissolved corporation engaged in software development and consulting, and its principal, Eswari Achanta. In Docket No. 322021, plaintiff Venkata Nallaballi sought to assert rights as a shareholder in the corporation even though those rights did not arise until after the corporation ceased to exist. The trial court dismissed his claims and we affirm. In Docket No. 325704,

plaintiff Suneetha Nallaballi, Venkata's wife, sought to enforce rights as a shareholder, which she asserts were extant while the corporation did business and had income. The trial court dismissed her claims, finding that she lacked standing. We reverse and remand for further proceedings as to Suneetha's claims.

## I. FACTS

On January 30, 2009, Achanta filed articles of incorporation for GMGT. GMGT's operating agreement, dated February 1, 2009, was signed by Achanta, Suneetha, and Kalyani Gopalam. Pursuant to its terms, the three were equal shareholders in GMGT. Achanta was the manager and had the authority to make distributions to the shareholders.

In April 2009, the three shareholders entered into a stock redemption agreement under which Gopalam and Suneetha were to sell their shares back to the corporation in exchange for $25,000 each. The agreement did not specify a closing date. However, at some point, both Gopalam and Suneetha received $25,000 checks. Gopalam cashed her check, but Suneetha did not.

On July 14, 2009, GMGT, Achanta, Suneetha, and Venkata executed an "Amended Agreement of GMGT Technologies, Inc" which provided that Venkata "hereby assumes the interest taken by his wife . . . in the Operating Agreement." The amended agreement noted that Gopalam had resigned from the corporation and that she had been compensated for her interest. Significantly, the amended agreement stated that the "April 2009 Stock Redemption Agreement shall no longer have any force or effect upon the parties herein[.]" Thus, the amended agreement memorialized the fact that Gopalam's shares had been redeemed by GMGT but that Suneetha's shares had not been redeemed. The amended agreement went on to state that its purpose was to provide a mechanism by which Venkata would become a shareholder of GMGT, which he could not do at the time of execution because he did not have a valid green card.[1] It provided that when Venkata received his green card, "GMGT will promptly enter into a subsequent agreement making [Venkata] Nallaballi an equal partner in GMGT." The amended agreement further provided that, although Venkata was not yet a shareholder, he would have all the rights and responsibilities of a shareholder, including a share of the profits. Finally, the amended agreement also contained a severability clause providing that if any term or provision within it was declared to be illegal or invalid, it would not affect the balance of its terms and provisions.

On November 9, 2009, Venkata filed suit against Achanta and GMGT alleging that they had failed to comply with the amended agreement by refusing to provide him the rights of a shareholder. The circuit court dismissed the suit on the grounds that the provisions making Venkata a shareholder were illegal and could not be enforced. The court held that Venkata was not and could not be treated as a shareholder until he met the condition precedent of obtaining his green card and that until then he had no standing. The court stated:

---

[1] At the time the agreement was executed, Venkata had an H-1B visa and could not hold stock in a U.S. corporation.

-2-

[T]he only way that I can interpret this contract so as to not make it illegal is to interpret it to say that when he gets his Green Card those will be the rights that he will exceed to.

As it is, he has by his own admission not obtained the Green Card. And at this point, he has no status, no standing to seek any remedies that are sought in this complaint. Motion is granted. [*Nallaballi v Achanta*, unpublished opinion of the Court of Appeals, issued June 28, 2011 (Docket No. 298042), pp 3-4.]

Venkata appealed the circuit court's ruling, and we affirmed, stating:

. . . Nallaballi has no currently enforceable rights under the terms of the amended agreement. The only way to interpret the amended agreement without violating federal law is to interpret it as if it were an executory contract or contract subject to a condition precedent. When Nallaballi obtains his Green Card, but only at that time, he will have the rights listed in the amended agreement. [*Id.* at 8.]

Venkata obtained his green card on or about August 8, 2013. On November 13, 2013, he brought the instant suit. Defendants filed a motion for summary disposition, arguing that the claims had already been litigated, and, therefore, were barred by res judicata. Defendants also argued that GMGT had ceased to exist before Venkata obtained his green card, so his claims were legally impossible. The trial court agreed and granted summary disposition to defendants.

Suneetha then filed suit against defendants alleging the same three counts, arguing that the rulings in the two prior cases involving Venkata rendered the amended agreement null and void as to Venkata, thereby resurrecting Suneetha's rights under the original agreement. Defendants filed for summary disposition alleging that Suneetha lacked standing to sue because the amended agreement had supplanted the original agreement. The trial court again agreed, concluding that the amended agreement was enforceable subject to a condition precedent, and that, as a result, Suneetha had no standing to sue defendants.

## II. STANDARD OF REVIEW

Both a lower court's decision on a motion for summary disposition and the interpretation of legal instruments are questions that are reviewed de novo, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005), as are a grant of summary disposition under MCR 2.116(C)(7), *Bint v Doe*, 274 Mich App 232, 233; 732 NW2d 156 (2007), the applicability of res judicata, *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999), and the interpretation and application of a statute, *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

## III. DOCKET NO. 322021

Defendants argue that Venkata's claims are precluded by the doctrine of res judicata. We disagree. In Venkata's original case, both the circuit court and this Court dismissed Venkata's claims due to his lack of standing because he had not met the condition precedent in the amended

agreement. Neither the circuit court nor this Court resolved the issues on their merits. Instead, both courts held that Venkata would become a shareholder and attain enforceable rights when he obtained his green card. *Nallaballi*, unpub op at 3-4, 8. Therefore, the prior actions of both courts envisioned that Venkata could bring the claims again, to be tested on the merits, if and when he obtained his green card. Because he has done so, his suit is not barred on res judicata grounds.

Nevertheless, we conclude that the trial court properly granted summary disposition on Venkata's claims because he cannot claim to have become a shareholder of GMGT before its dissolution. Even if we were to find that the corporation's shares could have been transferred to Venkata after its dissolution, this would not provide a basis for him to claim that he was entitled to any rights or income as a shareholder at the time the corporation existed. The amended agreement did not provide, nor could it, that upon obtaining his green card, he would become a shareholder *retroactive* to the date the amended agreement was executed.

## IV. DOCKET NO. 325704

Suneetha, who had not previously filed suit against defendants, asserts that because Venkata never became a shareholder pursuant to the amended agreement, her interest in the corporation was never eliminated and she remained a shareholder throughout GMGT's existence.

Defendants argue that pursuant to the stock redemption agreement, Suneetha's shares were purchased by the corporation in 2009. However, the amended agreement specifically provided that "the terms of the Stock Redemption Agreement, as it affects the parties herein, shall become null and void upon the parties herein entering into this Amended Agreement. The April 2009 Stock Redemption Agreement shall no longer have any force or effect upon the parties herein[.]"

This provision of the amended agreement was not declared illegal or invalid in the prior case. And, as noted, the amended agreement contains a severability provision. Thus, the invalidity of the agreement's provisions transferring Suneetha's shares to Venkata or giving Venkata any shareholder rights, does not affect any other provision or the relationship of the parties. The amended agreement is *binding* insofar as it voided the redemption of Suneetha's shares, but *void* insofar as it purported to transfer those shares to Venkata. Thus, Suneetha's shares remained her own and she has standing to seek to enforce her rights as a shareholder during GMGT's existence.

## V. CONCLUSION

As determined in Venkata's first suit, he had no rights to, or in, the corporation until he obtained his green card. By the time he did so, there was no longer a corporation, so there were no still-existing shares to transfer to him. Accordingly, the circuit court properly dismissed Venkata's claims in Docket No. 322021. However, because the redemption agreement between Suneetha and GMGT was void, no transfer of her shares occurred and Suneetha retained her 1/3 share of the corporation during its entire existence. Accordingly, she has standing to sue GMGT and Achanta for their alleged failure to provide her with the rights due to a shareholder, including an accounting and 1/3 of the distributions made during its existence. Accordingly, we

reverse the trial court's dismissal in Docket No. 325704 and remand the case for proceedings consistent with this opinion. Defendants may tax costs in Docket No. 322021 and Suneetha may tax costs in Docket No. 325704. See MCR 7.219. We do not retain jurisdiction.


/s/ Douglas B. Shapiro